U.S. DISTRICT COURT - N.D. OF N.Y.
FILED
NOV 1 5 2021
AT____O'CLOCK____
John M. Domurad, Clerk - Albany

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br>*Plaintiff*,<br>v.<br>IFTIKAR AHMED,<br>*Defendant*, and<br><br>IFTIKAR ALI AHMED SOLE PROP; I-CUBED DOMAINS, LLC; SHALINI AHMED; SHALINI AHMED 2014 GRANTOR RETAINED ANNUITY TRUST; DIYA HOLDINGS LLC; DIYA REAL HOLDINGS, LLC; I.I. 1, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; I.I. 2, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; and I.I. 3, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents,<br><br>*Relief Defendants*. | Civil No. 3:15cv675 (JBA)<br><br>December 20, 2018<br><br>1:21-mc-51 (DNH/DJS) |

**ORDER APPOINTING RECEIVER**

Judgment was entered against the Defendant and Relief Defendants, holding Mr. Ahmed liable for disgorgement of $41,920,639 plus prejudgment interest of $1,491,064.01 and any interest or gains accrued on disgorged frozen assets from the date of the Court's freeze order, and a civil penalty of $21,000,000. (Amended Final J. [Doc. # 1054] at 4.) The judgment in this case has been stayed only insofar as no assets will be distributed in satisfaction of the judgment while appeals are pending. (*See id.* at 9; Ruling on Def.'s Mot. to Stay the Judgment [Doc. # 1052] at 5-7.) The "process of preparing for any post-appeal distribution of assets to satisfy the judgment, including but not limited to appointment of a receiver or other process for valuing and liquidating frozen

assets, the valuation of those assets, and any liquidation of illiquid frozen assets needed to secure the judgment, is not stayed." (Ruling on Def.'s Mot. to Stay at 7.)

I. DISCUSSION

A. BACKGROUND

The parties briefed issues related to enforcement of the judgment, including the possible appointment of a receiver or other process for valuing, liquidating, and, if necessary, distributing assets in satisfaction of that judgment. A hearing was held on November 28, 2018 at which the SEC and the Relief Defendants made proposals as to the proper method of enforcing the judgment and presented potential receiver candidates. (*See* Tr. of Nov. 28 Hearing [Doc. # 1043]; *see also* Def.'s Resp. to Hearing [Doc. # 1057]; SEC's Post-Hearing Brief [Doc. # 1059].)

Counsel for the SEC represented that it is "not asking to give these [disgorged] funds to victims now," but argues that funds sufficient to satisfy the judgment should be liquidated and/or transferred "in cash . . . into a court-monitored account." (Tr. at 102:21-24.) The SEC asks the Court to "liquidate sufficient assets to obtain the amount of the judgment" in order to "guarantee that the SEC is going to be no worse off" if the judgment is affirmed on appeal. (*Id.* at 104:1-9.) Under the SEC's proposal, "any other funds that remain" after the amount of the judgment is secured in cash "are released from the asset freeze." (*Id.* at 104:15-18.) The SEC argues that a receiver should be appointed to (i) "value the [frozen] assets . . . to determine which assets need to be liquidated to satisfy the judgment," "start[ing] with the most liquid" assets and continuing "until you get an amount to satisfy the judgment"; (ii) "take control of the assets, especially those that are subject to risk of decline or need monitoring"; (iii) "determine how to manage these assets"; (iv) "pay any necessary taxes upon liquidation and wind down the entities holding the assets"; and (v)

2

to liquidate assets in an amount sufficient to satisfy the judgment and place them in a court-monitored account for holding while appeals are pending. (*Id.* at 110:3-113:6.)

Relief Defendants propose (i) that the judgment be secured by "liquidat[ing] assets to secure cash of $46.4 million" which would "secure the disgorgement and the prejudgment interest amount in full"; (ii) "the New York apartments, the farm, and the assets at Oak would be valued by a mutually-agreed third party . . . and would be used to secure the remainder of the judgment for the SEC"; (iii) $3 million be released from the asset freeze to pay legal expenses for appeals and living expenses; and (iv) because "at that point, the SEC would be secured, the remaining assets would be released." (*Id.* at 117:15-119:3.) Relief Defendants argue that, because assets sufficient to secure the judgment would either be in cash or remain frozen, "we don't need a large receivership at this time." (*Id.* at 119:1-3.) Under the Relief Defendants' proposal, the proper role of any receiver or third party would only be to value the assets used to secure the remainder of the judgment. Any liquidation of assets needed to secure the $46.4 million in cash would be conducted by the Defendant or the Relief Defendants themselves. (*Id.* at 117:20-21.)

Defendant argues that a receiver is not "necessary in this case." (Def.'s Resp. to Hearing at 17.) He suggests that only an "evidentiary hearing on the value of the non-forfeited Oak assets and independent appraisals . . . [of] the two NYC apartments and the farm" are needed at this time, and that "a receiver is not needed for these valuation exercises." (*Id.*) Instead of appointing a receiver to value and liquidate assets to secure the judgment, Mr. Ahmed urges the Court (i) to apply the value of those non-forfeited Oak assets to the disgorgement award, reducing the award by that amount; and (ii) "then [] and only then" to "discuss how to secure the judgment for the SEC, as the rest of the judgment amount depends on this critical determination first." (*Id.* at 6.) Instead of enlisting a receiver or third party to value and liquidate assets, Mr. Ahmed proposes that

3

(i) the asset freeze remain in place to secure the judgment; (ii) a receiver be appointed for the "limited purposes of valuing" the two New York apartments, the farm, and all non-forfeited assets at Oak; (iii) Relief Defendants "will start opportunistically monetizing all stock, bonds, and securities held at the various brokerage houses," which will be completed within 90 days of a court order, and the cash from which sales would "stay in their respective accounts as they are today"; (iv) "the SEC will consent to the immediate release of $500K for the Relief Defendants' appellate counsel of their choice"; (v) there shall be "no distributions pending appeal(s)" but the three properties should be rented out if possible to generate cash flow "to pay the Relief Defendant's living expenses and legal counsel." (*Id.* at 38-39.) Mr. Ahmed also requests that, if his proposal is "not acceptable" to the Court, a mediator be appointed "to try and determine a mutual and consensual agreement . . . between all parties before this esteemed Court rules" on the appropriate next steps to enforce the judgment. (*Id.* at 40.)

### B. APPOINTMENT OF RECEIVER

Appointment of a receiver in an SEC enforcement action is within the Court's equitable discretion. *See S.E.C. v. Am. Bd. of Trade, Inc.*, 830 F.2d 431, 436 (2d Cir. 1987) ("Although neither the Securities Act of 1933 nor the Securities Exchange Act of 1934 explicitly vests district courts with the power to appoint trustees or receivers, courts have consistently held that such power exists . . . where necessary to prevent the dissipation of a defendant's assets pending further action by the court." (internal citation omitted)); *Lankenau v. Coggeshall & Hicks*, 350 F.2d 61, 63 (2d Cir. 1065) ("While it is true that the Act does not explicitly provide for appointment of receivers, there is little reason to doubt that equitable power to do so exists.").

A receiver may perform functions like "preserv[ing] the status quo" and avoiding "difficult[y in] implement[ing] the court's order to refund the misappropriated proceeds" to

4

victims. *S.E.C. v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1105 (2d Cir. 1972). Moreover, where a defendant has engaged in "fraudulent conduct," it is "not unreasonable for the court to conclude that it could not rely" on the defendant to assist in effectuating the judgment and to instead appoint a receiver to do so. *Id.*

This case involves a substantial collection of currently frozen assets which must be managed, valued, and/or liquidated while appeals are pending, and distributed should the SEC prevail on appeal. The Court recognizes the parties' concerns regarding the potential cost of a receiver and shares their desire to avoid unnecessary or high receivership costs. Nonetheless, given the need to value the frozen assets and avoid over-freezing, to secure the judgment for the SEC, to manage and maximize the value of frozen assets under the guidance of a neutral third party, and to take necessary steps toward effectuating the judgment, the Court will appoint a receiver. In the absence of any authority in support of the Defendants' position that the SEC should pay for the costs of a receiver, all costs of the receivership in this case will be paid from among the assets of the Receivership Estate.

At the November 28 hearing, the SEC presented three receiver candidates: Jed Horwitt of Zeisler & Zeisler, P.C.; Mark Conlan of Gibbons P.C.; and William Edwards of Goldin Associates LLC. The Relief Defendants presented Robert Holzberg, Retired Judge of the Connecticut Superior Court, now of Pullman & Comley LLC. Relief Defendants also acknowledged that the candidates proffered by the SEC were "all capable" and could serve as a "mutually-agreed third party" in this case. (Tr. at 118:9, 121:12-19.) Mr. Ahmed has not proposed any receiver candidates but did express questions and concerns with regard to the SEC's proposed candidates and, "if there were to be a receiver appointed, the Defendant prefers Judge Holzberg." (*See* Def.'s Resp. at 17-27.) The

5

Court recognizes that all four proffered candidates are well qualified, as each has relevant experience and spoke knowledgeably about the role of a receiver in this case.

The Court appoints Jed Horwitt of Ziesler & Zeisler, P.C. as receiver in recognition of his breadth of experience in securities, bankruptcy, and insolvency cases; the experience and knowledge of others at his firm; and his longstanding contacts with outside experts and advisers who may be of assistance in carrying out the duties of the receiver in this case. Mr. Horwitt's fee structure was also the most cost-efficient of those proposed by the four receiver candidates. The Court also appoints Zeisler & Zeisler, P.C. as counsel for the Receiver.

## C. POWERS AND DUTIES OF RECEIVER

### General Powers and Duties

1. The Receiver shall control the operation of the Receivership Estate.
2. The Receivership Estate includes all assets subject to the Court's asset freeze order [Doc. # 113] as modified throughout this litigation.
3. The Defendant and Relief Defendants shall have no authority with respect to the Receivership Estate's assets, except to the extent such authority existed previously under the Court's asset freeze order or as may be hereafter expressly granted by the Receiver or the Court.
4. The Receiver shall have all powers, authorities, rights, and privileges possessed by the Defendant or Relief Defendants with regard to the assets of the Receivership Estate under applicable state and federal law, by the governing charters, by-laws, articles, and/or agreements in addition to all powers and authority of a receiver at equity, and all powers conferred upon a receiver by 28 U.S.C. §§ 754, 959 and 1692, and Fed. R. Civ. P. 66, to the extent necessary to accomplish the Receiver's duties. Nothing herein shall be construed as a requirement that the

receiver <u>must</u> take possession, custody, or control of any particular asset in the course of executing his duties as Receiver.

    5. The Receiver shall have the following general powers and duties:

        a. To use reasonable efforts to determine the nature, location, and value of property interests of the Receivership Estate;

        b. To take possession, custody, and control of all records and property of the Receivership Estate;

        c. Upon the submission by the Relief Defendants of a written request accompanied by appropriate documentation, to approve the payment of Relief Defendants' reasonable living expenses consistent with the Orders issued by this Court;

        d. To manage, in consultation with qualified business advisors, and taking into consideration the wishes of Defendant and Relief Defendants, and with the dual objects of maximizing the realizable value of the assets of the Receivership Estate and minimizing the expense charged thereto, the assets of the Receivership Estate, pending further order of the Court or until such time that the Receivership Estate can be liquidated or modified, including but not limited to management of investments and rental and maintenance of real property;

        e. To engage and employ persons in his discretion, as reasonably necessary, consistent with the dual objects of maximizing the value of the assets of the Receivership Estate and minimizing the expenses charged thereto, to assist him in carrying out his duties and responsibilities hereunder, including, but not limited to, accountants, attorneys, securities traders, registered representatives, financial advisers, liquidating agents, real estate agents and forensic experts;

        f. To use property of the Receivership Estate for the benefit of the Receivership Estate, making payments and disbursements and incurring expenses as may be necessary or advisable in the ordinary course of business in discharging his duties as Receiver;

        g. To take any action (whether or not in the ordinary course of business) which, prior to the asset freeze in this case, could have been taken by the Defendant or Relief Defendants with regard to the assets of the Receivership Estate;

        h. To take such action as necessary and appropriate for the preservation of the Receivership Estate, to prevent the dissipation or concealment of assets of the Receivership Estate, and to manage the assets of the Receivership Estate, in

furtherance of the dual objects of maximizing the value of the assets of the Receivership Estate and minimizing the expenses charged thereto;

i. To issue subpoenas for documents and testimony consistent with the Federal Rules of Civil Procedure;

j. To take such other action as may be approved by this Court.

k. The Receiver has a continuing duty to ensure that there are no conflicts of interest between the Receiver, his Retained Personnel (as that term is defined below), and the Receivership Estate.

l. Until further Order of this Court, the Receiver shall not be required to post bond or give an undertaking of any type in connection with his fiduciary obligations in this matter.

m. The Receiver and his agents, acting within the scope of such agency ("Retained Personnel," as defined below) are entitled to rely on all outstanding rules of law and Orders of this Court and shall not be liable to anyone for their own good faith compliance with any order, rule, law, judgment, or decree. In no event shall the Receiver or Retained Personnel be liable to anyone for their good faith compliance with their duties and responsibilities as Receiver or Retained Personnel, nor shall the Receiver or Retained Personnel be liable to anyone for any actions taken or omitted by them except upon a finding by this Court that they acted or failed to act as a result of malfeasance, bad faith, gross negligence, or in reckless disregard of their duties.

n. This Court shall retain jurisdiction over any action filed against the Receiver or Retained Personnel based upon acts or omissions committed in their representative capacities.

o. In the event the Receiver decides to resign, the Receiver shall first give written notice to the SEC, the Defendant and the Relief Defendants, through counsel where appropriate, and the Court of its intention, and the resignation shall not be effective until the Court appoints a successor. The Receiver shall then follow such instructions as the Court may provide.

### Access to Information

6. The Defendant and Relief Defendants and any officers, directors, agents, managers, general and limited partners, trustees, attorneys, accountants, and employees thereof, as well as those

acting in their place, are hereby ordered and directed to turn over to the Receiver promptly upon request and to preserve all paper and electronic information of, and/or relating to, any asset of the Receivership Estate; such information shall include but not be limited to books, records, documents, accounts, and all other instruments and papers, but shall not include materials which are subject to a valid attorney client privilege, or any other applicable privilege or protection from disclosure, relating to the representation of the Defendants.

7. Within thirty (30) days of the entry of this order, Defendant and the Relief Defendants shall file with the Court and serve upon the Receiver and the SEC a sworn statement, listing: (a) the identity and location of all assets of the Receivership Estate; and (b) all employees, other personnel, attorneys, accountants, and any other agents or contractors of the Defendants who may possess information about the assets of the Receivership Estate.

8. The Defendant and Relief Defendants' past and/or present officers, directors, agents, members, managers, shareholders, employees, accountants, debtors, creditors, general and limited partners, and all other appropriate persons shall answer all questions which the Receiver may put to them and produce all documents as required by the Receiver regarding the assets of the Receivership Estate, or any other matter relevant to the operation or administration of the receivership; provided, however, that nothing in the foregoing is intended to require waiver of the attorney client privilege or any other applicable privilege or protection from disclosure. In the event that the Receiver deems it necessary to require the appearance of the aforementioned persons or entities, the Receiver shall make its discovery requests in accordance with the Federal Rules of Civil Procedure.

9. The Receiver shall have authority to issue subpoenas to compel testimony of persons or production of records, consistent with the Federal Rules of Civil Procedure and applicable Local

Rules, except for the provisions of Fed. R. Civ. P. 26(d)(1), concerning any subject matter within the powers and duties granted by this Order.

10. The Defendant and Relief Defendants are required to assist the Receiver in fulfilling his duties and obligations. As such, they must respond promptly and truthfully to all requests for information and documents from the Receiver.

### Access to Books, Records, and Accounts

11. The Receiver is authorized to take possession, custody, and control of all assets, bank accounts or other financial accounts, real property, books and records, and all other documents or instruments relating to the assets of the Receivership Estate. All persons and entities having possession, custody, or control of any property of the Receivership Estate are hereby directed to provide access to the Receiver and to turn such property over to the Receiver at the Receiver's request.

12. The Defendant and Relief Defendants, as well as their agents, servants, employees, attorneys, any persons acting for them or on their behalf, and any persons receiving notice of this Order by personal service, facsimile transmission or otherwise, having possession, custody or control of the property, business, books, records, accounts or assets of the Receivership Estate are hereby directed to deliver the same to the Receiver, his agents, and/or employees.

13. Upon demonstration of need, the Receiver shall allow reasonable access to the books, records, or other documents necessary for the Defendants to comply with their obligations under this Order and/or to defend themselves in this proceeding under terms and conditions which he determines to be appropriate and under the circumstances which are consistent with his obligations to preserve and protect relevant materials and with prior Court orders.

14. All banks, brokerage firms, financial institutions, and other persons or entities which have possession, custody or control of any assets or funds of the Receivership Estate that receive actual notice of this Order by personal service, facsimile transmission or otherwise shall:

   a. Not liquidate, transfer, sell, convey or otherwise transfer any assets, securities, funds, or accounts of the Receivership Estate except as approved by the Receiver;

   b. Not exercise any form of set-off, alleged set-off, lien, or any form of self-help whatsoever, or refuse to transfer any funds or assets to the Receiver's possession, custody or control without the permission of this Court;

   c. Within five (5) business days of receipt of that notice, serve on the Receiver and counsel for the parties, including the investors, a certified statement setting forth, with respect to each such account or other asset, the balance in the account or description of the assets as of the close of business on the date of receipt of the notice; and,

   d. Cooperate expeditiously in providing information and transferring funds, assets, and accounts to the Receiver or at the direction of the Receiver.

## Access to Real and Personal Property

15. The Receiver is authorized to take possession, custody, and control of all real property in the Receivership Estate.

## Notice to Third Parties

16. The Receiver shall promptly give notice of his appointment to all known officers, directors, agents, employees, shareholders, creditors, debtors, managers, members, general and limited partners, and any other such persons as the Receiver deems necessary or advisable to effectuate the operation of the receivership.

17. All persons and entities owing any obligation, debt, or distribution with respect to an ownership interest to any of the Receivership Defendants shall, until further ordered by this Court, pay all such obligations in accordance with the terms thereof to the Receiver and its receipt for such

11

Case 3:15-cv-00675-JBA Document 1070 Filed 12/20/18 Page 12 of 17

payments shall have the same force and effect as if the applicable Defendant had received such payment.

18. In furtherance of his responsibilities in this matter, the Receiver is authorized to communicate with, and/or serve this Order upon, any person, entity or government office that he deems appropriate to inform them of the status of this matter and/or the financial condition of the Receivership Estate. All government offices which maintain public files of security interests in real and personal property shall, consistent with such office's applicable procedures, record this Order upon the request of the Receiver or the SEC.

### Injunction Against Interference with Receiver

19. The Defendant, Relief Defendants, and all persons receiving notice of this Order by personal service, facsimile, or otherwise are hereby restrained and enjoined from directly or indirectly taking any action or causing any action to be taken, without the express written agreement of the Receiver, which would:

    a. Interfere with the Receiver's efforts to take possession, custody or control of, or to manage, any assets of the Receivership Estate; such prohibited actions include but are not limited to, using self-help or executing or issuing or causing the execution or issuance of any court attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with or creating or enforcing a lien upon any property of the Receivership Estate;

    b. Hinder, obstruct or otherwise interfere with the Receiver in the performance of his duties; such prohibited actions include but are not limited to, concealing, destroying or altering records or information;

    c. Except with respect to authorized expenditures, dissipate or otherwise diminish the value of any property of the Receivership Estate; such prohibited actions include but are not limited to, releasing claims or disposing, transferring, exchanging, assigning or in any way conveying any property of the Receivership Estate, enforcing judgments, assessments or claims against the property of the Receivership Estate, attempting to modify, cancel, terminate, call, extinguish,

revoke or accelerate (the due date), of any lease, loan, mortgage, indebtedness, security agreement or other agreement which affects the Receivership Estate; or,

d. Interfere with or harass the Receiver, or interfere in any manner with the exclusive jurisdiction of this Court over the Receivership Estate.

20. The Defendant and Relief Defendants shall cooperate with and assist the Receiver in the performance of his duties.

21. The Receiver shall promptly notify the Court and counsel for the parties of any failure or apparent failure of any person or entity to comply in any way with the terms of this Order.

### Stay of Litigation

22. As set forth below, the following civil proceedings, excluding the instant enforcement action including appeals, and related actions of the SEC are stayed until further Order of this Court:

All civil legal proceedings of any nature, including, but not limited to, bankruptcy proceedings, arbitration proceedings, foreclosure actions, default proceedings, or other actions of any nature: (a) against the Receiver, in his capacity as Receiver; (b) to obtain possession of property of the Receivership Estate, wherever located; (c) against any of the Defendants, including any wholly-owned subsidiaries and partnerships in which a Defendant is a general partner; or, (d) against any of the Defendants' past or present officers, directors, managers, members, agents, or general or limited partners sued for, or in connection with, any action taken by them while acting in such capacity of any nature, whether as plaintiff, defendant, third-party plaintiff, third-party defendant, or otherwise (such proceedings are hereinafter referred to as "Ancillary Proceedings").

23. The parties to any and all Ancillary Proceedings are enjoined from commencing or continuing any such legal proceeding, or from taking any action, in connection with any such proceeding, unless leave of this Court is obtained, including, but not limited to, the issuance or employment of process. Any applicable statute of limitation is hereby tolled as to any and all such causes of action during the period in which this injunction against commencement of legal proceedings is in effect.

24. Further, as to a cause of action accrued or accruing in favor of the Defendants against a third person or party, any applicable statute of limitation is tolled during the period in which this injunction against commencement of legal proceedings is in effect as to that cause of action.

### Managing Assets

25. The Receiver may establish one or more custodial accounts at a federally insured bank to receive and hold all cash and cash-equivalent property of the Receivership Estate ("the Receivership Funds") for the Receivership Estate.

26. The Receiver's deposit account shall be entitled "Receiver's Account, Estate of Iftikar Ahmed" together with the name of this action.

27. The Receiver may, without further Order of this Court, deposit, transfer, protect, or otherwise manage the assets of the Receivership Estate, other than real estate, in the ordinary course of business, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, subject to consultation with the Defendant and Relief Defendants, for the dual objects of maximizing the value of the Receivership Estate and minimizing the expenses relating thereto.

28. If subsequently ordered by this Court, pursuant to such procedures as may be required by this Court and additional authority such as 28 U.S.C. §§ 2001 and 2004, and with due regard for the interests of the Defendant and Relief Defendants, the Receiver will be authorized to lease or to sell, and transfer clear title to, all real property and ownership interests in the Receivership Estate. Any proceeds of any such sale shall be joined and held with the Receivership Funds.

### Reports

29. Within ninety (90) days after this Order is entered by the Court, the Receiver shall file and serve a report reflecting (to the best of the Receiver's knowledge as of the date of the report): (i) the

14

existence, value, and location of assets of the Receivership Funds and all other assets of the Receivership Estate which are liquid or could be liquidated with relative ease, including but not limited to publicly traded securities and brokerage accounts; (ii) the Receiver's proposal for securing the judgment using additional assets of the Receivership Estate, including the Receiver's recommendations as to which additional assets should be valued for possible liquidation and placement into a Court Registry Investment System ("CRIS") account and the order in which the Receiver proposes to liquidate such assets; and (iii) the Receiver's estimate regarding the dollar amount which should ultimately be placed into such account to fully secure the judgment, taking into consideration the amount of the judgment in this case, the costs of the receivership and administration of the Receivership Estate, and any other relevant factors.

30. Upon further order of this Court, the Receiver shall file and serve additional reports regarding the valuation of or proposing the liquidation of additional assets needed to secure the judgment.

31. The Receiver shall provide the SEC with any non-privileged documentation that the SEC needs to meet its reporting requirements, that is mandated by statute or Congress, or that is otherwise necessary to further the SEC's mission.

### Fees, Expenses, and Accountings

32. Subject to paragraphs 33–39 immediately below, the Receiver need not obtain Court approval prior to the disbursement of Receivership Funds for expenses in the ordinary course of the administration and operation of the receivership. Further, prior Court approval is not required for payments of applicable federal, state, or local taxes.

33. The Receiver is authorized to solicit persons and entities ("Retained Personnel") to assist him in carrying out the duties and responsibilities described in this Order. The Receiver shall not

15

engage any Retained Personnel without first obtaining an Order of the Court authorizing such engagement.

34. The Receiver and Retained Personnel are entitled to reasonable compensation and expense reimbursement from the Receivership Estate as described in the "Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission" (the "Billing Instructions," posted at https://www.sec.gov/oiea/Article/billinginstructions.pdf). Such compensation shall require the prior approval of the Court and shall be calculated pursuant to the following hourly billing rates:

        Jed Horwitt (Receiver/Administrative):    $250.00

        Jed Horwitt (Legal work):    $396.00

        All Zeisler & Zeisler, P.C. attorneys: 25% percent discount to standard hourly rates.

35. Within forty-five (45) days after the end of each calendar quarter, the Receiver and Retained Personnel shall apply to the Court for compensation and expense reimbursement from the Receivership Estate (the "Quarterly Fee Applications"). At least thirty (30) days prior to filing a finalized Quarterly Fee Application with the Court, the Receiver will serve upon counsel for the parties and Defendant Ahmed a complete copy of the proposed Application, together with all exhibits and relevant billing information in a format to be provided by the SEC.

36. All Quarterly Fee Applications will be interim and will be subject to cost/benefit and final reviews at the close of the receivership. At the close of the receivership, the Receiver will file a final fee application, describing in detail the costs and benefits associated with all litigation and other actions pursued by the Receiver during the course of the receivership.

37. Quarterly Fee Applications are subject to a holdback in the amount of 20% of the amount of fees and expenses for each application filed with the Court. The total amounts held back during

the course of the receivership may be paid out at the discretion of the Court as part of the final fee application submitted at the close of the receivership.

38. Each Quarterly Fee Application shall:

   a. Comply with the terms of the SEC Billing Instructions; and,

   b. Contain representations (in addition to the Certification required by the Billing Instructions) that: (i) the fees and expenses included therein were necessarily incurred in the best interests of the Receivership Estate; and, (ii) with the exception of the Billing Instructions, the Receiver has not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation paid or to be paid from the Receivership Estate, or any sharing thereof.

39. At the close of the Receivership, the Receiver shall submit a Final Accounting, in a format to be provided by the SEC, as well as the Receiver's final application for compensation and expense reimbursement.

## II. CONCLUSION

Until further Order of this Court, Jed Horwitt of Zeisler & Seizler, P.C. is hereby appointed to serve as receiver for the assets subject to the Court's asset freeze order and is subject to the duties and powers set forth above. Zeisler & Zeisler, P.C. is also appointed as counsel for the Receiver.

IT IS SO ORDERED.

/S/

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 20th day of December, 2018.